Court will come to order. This panel consisting of Judge Keenan, Judge Rushing, and yours truly, Judge King, are here this morning with counsel to conduct the oral argument in Gordon v. Barr, 1915-39. The appellant's counsel, who has reserved 10 minutes, Ms. Lee, has the floor. Ms. Lee. Thank you, Your Honor, and may it please the Court. My name is Samantha Lee. My co-counsel, Jenny Kim, and I represent Conroy Steve Gordon. Ms. Kim and I are dividing our argument on behalf of Mr. Gordon today. I will address the arguments discussed in Sections 1 to 3 of our opening brief, and Ms. Kim will address the arguments discussed in Sections 4 and 5. Mr. Gordon, a United States lawful permanent resident for 26 years, was removed to Jamaica based on a misdemeanor conviction from November 2008. Mr. Gordon was removed because the BIA erred as a matter of law in its interpretation and application of the categorical approach. I will address the Board's first legal error. The Board erred as a matter of law because it found a categorical match between a Virginia state statute and the alleged INA ground of removability. The Virginia statute is not only overbroad on its face, it is overbroad as interpreted by Virginia's highest courts. The Board erred when it found that this overbreadth was not enough to resolve the categorical analysis. Because the government had not carried its burden to prove removability by clear and convincing evidence, the Board erred when it shifted the burden and insisted that Mr. Gordon must prove overbreadth by submitting proof of the successful prosecution of an individual for conduct in Virginia that does not constitute a certain firearms offense under the INA. Ms. Kim will address our argument in the alternative regarding the Board's second legal error, which is that the Board erred as a matter of law when it ignored that Mr. Gordon did, in fact, Mr. Gordon's statute of conviction is categorically overbroad relative to the alleged removal ground. Mr. Gordon's conviction under Virginia Code 18.2-280 cannot support removal for a firearms offense under the INA because the federal definition of firearm excludes antique firearms and the Virginia definition that applies to 18.2-280 does not. The categorical approach serves the immigration law system. It is rooted in the congressional intent that immigration consequences flow from a conviction and not from conduct. So the question under the categorical approach is, what did the state necessarily establish when it convicted Mr. Gordon of a misdemeanor under Virginia Code section 18.2-280? Another way of saying this is, what are the elements of that Virginia Code offense? What is the minimum culpable conduct? If, as here, the minimum culpable conduct under the Virginia Code does not rise to the level of a removable offense, there is no categorical match. The analysis is, therefore, straightforward. We look first to the language of the statute itself in the context of the entire statutory scheme. Virginia criminalizes a variety of conduct implicating health and safety under Chapter 7 of its Code, including dozens of firearm offenses. Among these is Virginia Code 18.2-280, willfully discharging firearms in public places, the statute at issue in Mr. Gordon's removal proceedings. And that's a misdemeanor offense, is it not? That's correct, Your Honor. Mr. Gordon was convicted of a misdemeanor offense and sentenced to a $100 fine and 10 days to be served on weekends only. Some of these firearm offenses include their own explicit statutory definitions. Some, like Virginia Code 18.2-280, do not. But where the Virginia General Assembly wished to exclude antiques from firearm offenses in the same manner as the INA and the Federal Criminal Code excludes antiques from the definition of firearm, it knew how to do so. For example, in Virginia Code 18.2-308.22, which is related to criminal history checks for firearm purchases, the Virginia General Assembly specified that enforcement of that provision excludes antique firearms. In Virginia Code 18.2-308.2, criminalizing possession of firearm by a convicted felon, the Virginia General Assembly acted in 2017 to amend the provision to specifically exclude application to antique firearms for nonviolent offenders only. In other words, it still criminalizes the possession of antique firearms for violent offenders. Virginia has continued that march to this day. In Virginia Code 18.2-308.22R, limiting the purchase of firearms within a 30-day period, the Virginia General Assembly again specified that although it used the term firearm in the code, that particular provision does not apply to antique firearms. In other words, under Chapter 7 of the Virginia Code, a reference to firearms should be understood to have the common meaning, any firearm. When the Virginia legislature wishes to specify that conduct with a firearm is not punishable. Yes, Your Honor. This is Judge Rushing. The government says that Moncrief takes off the table this idea that just not mentioning an exclusion for antique firearms makes the state statute not a categorical match for the federal statute. I take it you disagree with that, but is there more to your argument, even if that were the case, that there are other ways that your client could indicate that it's not improbable that Virginia would prosecute discharge of an antique firearm under the statute? Yes, Your Honor, as to both parts of your question. First, we do disagree that the Supreme Court in Moncrief set a different standard for the categorical approach for firearms offenses specifically. Second, there are additional ways in which a petitioner like Mr. Gordon can demonstrate over-breath beyond looking at the language of the statute itself. And that includes the pronouncements of the state court interpreting that statutory language, which is the next section of our argument. Before I turn to that, I will note that Moncrief was not a firearms case. So in that case, and the language... It was a drug case, was it not? Yes, Your Honor. What difference does that make? What possible difference does that make? I believe that it is the government that is arguing that the nature of offense makes a difference. Our position is the categorical approach remains the same, regardless of the conviction at issue. Ms. Lee, this is Judge Keenan. In Moncrief, the court couldn't tell whether the Georgia misdemeanor involving marijuana was a felony or a misdemeanor. That could not be told from the face of the documents before the court. Here, we know it's a misdemeanor. So to what extent does that play into your analysis? In other words, Moncrief was saying you have to look further, arguably because the record on its face in Moncrief did not show what was needed to be known. That is, was it a felony? Here, we know it's a misdemeanor. There's no ambiguity as to that. So does that factor into your analysis or not? It does, Your Honor. It does, Your Honor, in the exact conception of Moncrief that you just explained, which is that the Supreme Court only went beyond the plain language of the statute, where the plain language of the statute did not resolve the analysis. And so whereas here, the language of the statute itself, considered in the broader context of Chapter 7 of the Virginia Code, does resolve the analysis, there's no need to go further. Okay. And to what extent are you relying on Gerald v. Commonwealth and Armstrong v. Commonwealth in your analysis? We believe that Armstrong v. Commonwealth and Gerald v. Commonwealth, to Your Honor's question and to Judge Rushing's question, only confirm our interpretation of the language of the statute itself, which is a further burden that the government must carry. The analysis that Mr. Gordon's statute of conviction is broader than the certain firearms offenses removable under the INA is confirmed by the pronouncements of Virginia's highest courts. In Armstrong v. Commonwealth, a Virginia Supreme Court case from 2002, the Virginia Supreme Court explained that the General Assembly of Virginia intended to include any instrument designed, made, and intended to fire or expel a projectile by means of an explosion within the definition of a firearm, absent express language to the contrary. And that importing any unstated requirement otherwise would amount to an unreasonable, restrictive interpretation of that term and subvert the intent of the General Assembly. The weapon at issue in Armstrong v. Commonwealth was a John Wayne replica. In other words, an antique. And, yes, Your Honor. This is Judge Rushing. Would you agree with me that it looks like the Virginia courts, they apply a different definition of firearm under different statutes based on the purpose of what the statute's protecting against. In some situations, like you're describing, where the purpose is perhaps that there's a crime of using a firearm in commission of another offense. The legislature, we've been told, wanted to protect against the fear that's engendered by the use of something that appears to be a firearm, even if it's not, or even if it's not operable. But the courts have taken a different approach when it's, say, possession of a firearm by a felon, then it really has to be an actual firearm. But if it's inoperable, that's not an issue. In Gerald, from what I gather, the best guidance we have from the Virginia courts is that the discharge statute, its purpose is to protect against the physical danger of discharge of a firearm. How does that play into your argument about whether it's probable that the Virginia courts would actually enforce the statute against use or discharge of an antique versus a non-antique firearm? I do agree with you, Your Honor, that Virginia courts have applied and understood different definitions depending on the purpose of the interest protected by the particular offense under the Virginia Code. And that Gerald versus Commonwealth, which is a Virginia Court of Appeals case, confirms that for the purposes of 18.2-280, the offense at issue here in Mr. Gordon's case, the definition of firearm remains any weapon that will or is designed to or may readily be converted to expel single or multiple projectiles by the action or an explosion of a combustible bomb. It's not a weapon that will or is designed to explode single or multiple projectiles by the action or an explosion of a combustible bomb. It's a weapon that will or is designed to explode single or multiple projectiles by the action or an explosion of a combustible bomb. It's not a weapon that will or is designed to explode single or multiple projectiles by the action or an explosion of a combustible bomb. It's not a weapon that will or is designed to explode single or multiple projectiles by the action or an explosion of a combustible bomb. Mr. Gordon does not bear the burden of showing a realistic probability that Virginia Code section 18.2-280 is in fact applied to non-removable conduct because the realistic probability test simply does not apply, at least not in the way that the government asserts and that the board concluded. Properly understood, the realistic probability test applies to require a respondent to submit evidence of successful prosecution only after the government has met its burden to show a categorical match between the statute of conviction and the generic federal offense. So are you saying, excuse me Ms. Lee, this is Judge Keenan, so you're saying that the no realistic probability defense operates essentially as an affirmative defense on the defendant's part once a categorical match is established on its face, is that what you're saying? Yes, Your Honor. Okay, thank you. Because it is properly understood as a limit on the respondent's ability to refute a categorical match. Ms. Lee, this is Judge King, all this sounds very complicated maybe to a observer that hasn't studied it some, but it all comes down to a question of Virginia law, does it? Yes, Your Honor. And do we, in passing on that, afford any deference to the position taken by the immigration authorities or by the government attorneys as to what Virginia law is? You do not, Your Honor. The board's interpretation of state law is not entitled to deference under Chevron because the board has no special expertise in the application of Virginia state law. Instead, the court must honor the interpretation of state law that is apparent in Armstrong v. Commonwealth and Gerald v. Commonwealth. And I'm not too familiar with our timekeeping procedures here because we haven't done much of this telephone oral arguments, but I suspect that you're pretty well over time. Yes, Your Honor. I believe I was listening for the chime, but I haven't heard it. I would like to turn the argument over to my colleague, Ms. Kim, so that she has an opportunity. Before we do that, I'm going to see if either Judge Keenan or Judge Rushing have other questions for you. No, thank you. Thank you. Very good. Thank you very much, Ms. Lee. And we will now hear for a few minutes from your colleague, Ms. Kim. Ms. Kim, the floor is yours. Yes, good morning, Your Honors. May it please the court, my name is Jenny Kim on behalf of Commissioner Mr. Conroy Steve Gordon. Mr. Gordon, through the statute on its face as well as its legislative context and the state court interpretation, has shown that the government has failed to carry a burden to establish removability and that Virginia Code Section 18.2280 includes anti-firearms and is therefore overly broad. But, assuming our UNO that the realistic probability test does apply here, Mr. Gordon satisfies that as well. The realistic probability test exists to curb the legal imagination so that we don't conjure up fancy full fact patterns, as this court has said before, about the minimum conduct punishable under a statute. But here, there is no legal imagination necessary to determine that if an individual were to willfully discharge a firearm in a public place, regardless of whether that firearm was one magi-mastered before or after a certain year or a muzzle-loading firearm as opposed to a breech-loading one, that Virginia would prosecute the individual. Mr. Gordon is contending that under the Virginia Supreme Court definition of firearms in Armstrong v. Commonwealth, all Virginia firearms statutes cover antique firearms unless explicitly legislated otherwise. And in order to show that, Mr. Gordon points to two cases, Sarton v. Commonwealth and Miller v. Commonwealth. And to show that these cases demonstrate over breadth, Mr. Gordon first looks to the courts, as Ms. Lee has done before, to guide this realistic probability analysis. We do this because, number one, the state is the expert on the element and this court is constrained by the state court's interpretations of its statutes. And we can look to Sarton and Miller, which analyzes the definition of the term firearm in relevant firearm statutes, because this court has and can look to relevant statutes to conduct a realistic probability analysis. So looking at what the Virginia Supreme Court has said in Armstrong v. Commonwealth, the court there said that the firearm statutes are read in pari materia to give consistent meaning throughout the entire code. And then the court there, looking across a number of different firearm statutes, stated that the General Assembly intended to include any instrument designed, made, or intended to fire or expel a projectile by means of an explosion within the definition of a firearm across the code, absent express language to the contrary. So knowing all of this, we can now turn to Sarton and Miller. Sarton is a case that involves the statute 18.2 through 8.2, which punishes felons in possession of a firearm. In that case, the trial court successfully convicted Mr. Miller for owning a muzzle-loading rifle, which is an antique firearm under both the federal and the Virginia state definitions. The conviction was, in fact, overturned on appeal before the Court of Appeals in Virginia. But that was based on due process grounds because the court there found that the probation officer gave Mr. Miller wrong information about whether or not he was actually able to own this firearm. And the circumstance, therefore, called for an exception to the doctrine of ignorance of the law is no excuse. The law here being that Mr. Miller was, in fact, not allowed to own an antique firearm under this provision. And this is further confirmed by the fact that in 2017, the General Assembly amended this provision to explicitly exclude antique firearms, say, for those convicted with violent felonies. So we see this as an example of the Virginia court confirming that absent explicit language from the General Assembly, antique firearms are always included in Virginia firearm statutes. The second example we put forth is Starten v. Commonwealth, which was a Virginia Supreme Court case decided in 2011. The statute at issue there was 18.253.1, which criminalizes the use or display of a firearm in committing a felony. So in that case, the firearm in question was a John Wayne replica, which was one manufactured before 1898, thereby making it an antique firearm under both the federal and the Virginia state definition. There, the court affirmed that conviction, and in doing so, expanded the definition to accommodate this type of firearm, one that lacks a firing pin, to cover objects that appear to be a firearm. Now, the court there was very quick to point out that a statute should be strictly interpreted against the state and cannot be constructed beyond the spirit and the letter of the law. Now, given the fact that it's very obvious here that the John Wayne replica is an antique firearm, if antique firearms are excluded from the baseline Armstrong definition, then the court there would not have had to reach so far as to broaden that definition, but merely would have decided that this firearm in question, as a replica, is an antique and that one cannot be convicted of this. The government has pointed out that the firearm in question starting is inoperable, but as Ms. Lee has already stated, operability is not what decides whether a state definition of a firearm matches the federal definition. The federal definition of a firearm, in fact, covers inoperable firearms. We're not looking to 18.2280 and 18.253.1 to compare them to each other. We're looking to start in as an example of how antique firearms are taken for granted as being included in a relevant statute to demonstrate that antique firearms are included in every Virginia firearms statute unless explicitly legislated otherwise by the General Assembly. It is very clear, as Judge Rushing has stated, that the legislative intent is key on how the Virginia courts contour the baseline definition of Armstrong to each firearm statute, and that in starting, what mattered was not only that the firearm itself presented a danger, but also that there was an element of perception to the victim that mattered. So in a situation where the General Assembly legislates so that someone will not go into a public place and start shooting a firearm, it could not have been the intent of the General Assembly that the age of the firearm or that it's a muzzle-loading as opposed to a breech-loading firearm would somehow decide whether or not it was a punishable act. As previously discussed, there was an anxiety from the government in Moncrief that every state law that did not think to explicitly exclude antique firearms would then demonstrate overbreath, but we believe that's not the case here in Virginia. Statutes exist here where the General Assembly explicitly excluded antique firearms, such as felons in possession and one handgun a month's purchase limit. And in those provisions, one would not be able to demonstrate overbreath by relying on the antique firearms carve-out. Is that the thing for me to stop? I heard the bell go off that time. I think your time's up. Unless Judge Keenan or Judge Rushing have some additional questions. No, thank you. No, thank you. Very good. Now, the appellants have been here a few minutes. We're going to turn to the government. And Mr. Leo. Yes, good morning, Your Honors. Attorney Sabatino, that's Leo. On behalf of the United States Attorney General. Petitioner here is removable because his conviction under 18.2-280 is a firearms offense. And to determine whether that conviction under that particular state statute constitutes a firearm offense under the Immigration and Nationality Act, this court employs what's known as the categorical approach. And that really is the fundamental issue before this court today. It's the application of the categorical approach and how both the Supreme Court and this court has interpreted the categorical approach. And the government believes that petitioners have a misapprehension of that categorical approach and how it is to be applied in courts of the Fourth Circuit. Specifically, the categorical approach makes a comparison of the elements of the statute of conviction here, which is 18.2-280, willfully discharging a firearm in a public place, to the generic crime, using, owning, possessing, or carrying a firearm, as that term is defined under 18 U.S.C. section 921A3, as set forth in 8 U.S.C. section 237A2C, which is the Removability Statute. And this court must make the determination of whether or not that conduct prescribed by Virginia falls squarely within the meaning of that generic federal crime. And this is how we turn, I think, to Moncrief. And I think what we need to do is really get a basic understanding of the Moncrief decision. I know that there has been discussion here with regard to felony versus misdemeanor application and interpretation in Moncrief, but I think what we have to make clear is the Supreme Court in Moncrief was making the determination, not whether that conviction was felonious for purposes of the state statute, but whether or not it was an aggravated felony under the Immigration and Nationality Act. So I would invite this court's attention, honestly, to set aside the fact of whether or not this particular conviction is a misdemeanor or felony because it has no bearing, particularly on Petitioner's Removability. And what Moncrief does, what Moncrief expresses in the language in Moncrief is what it discusses. Go ahead, Your Honor. This is Judge King. So you're saying the fact that the conviction is a misdemeanor is irrelevant? It has no bearing on Petitioner's Removability under 8 U.S.C. section 1227A2C. Whether the ultimate conclusion or the ultimate issue here is whether or not his conviction for the state offense is a firearms offense, irrespective of whether or not that is interpreted as a felony or misdemeanor. I think it's clear from the record that he was charged with a misdemeanor in this particular case. But, again, there's been no argument otherwise with regard to whether or not its interpretation as a misdemeanor or felony by the state court of Virginia has any bearing on his Removability. And that's how Moncrief is decidedly different with respect to this, with respect to the felony misdemeanor interpretations that were being discussed by Petitioner. Right. So, Mr. Leo, don't we have, and this is Judge Keenan, don't we have in front of us the issue whether any firearm, the definition of any firearm as written in the statute by the Virginia General Assembly and as interpreted by Virginia's appellate courts includes antique firearms or not? Isn't that our issue? Well, the ultimate question is whether or not the state courts of Virginia have interpreted any firearm for purposes of 18.2-2 ADA to include antique firearms, which would render it not removable because it would include something that is, or firearms that are more broadly construed than that of the federal statute. Just one second, Mr. Leo. This is Judge Keenan again. In Armstrong, which the court was dealing with the felon in possession statute rather than the statute before us, but analogous in the sense that in Armstrong, the court was saying any instrument designed or intended to fire or expel a projectile absent expressed language to the contrary. The court was essentially saying, and later followed up by the Court of Appeals in Gerald, that when the statute uses the word any, it means any, unless there is expressed language to the contrary. How do you get around that? Well, I would get around that specifically by this court's interpretation of the categorical approach that says unequivocally in this particular situation, number one, Armstrong was interpreting 18-2 to that point, 308.2, which this is a felon in possession statute, not the statute of hand, number one. And number two, I think the court specifically in United States v. Winston, which I think your Honor was the author of in that particular decision, a 2017 decision that talks about focusing on the minimum conduct criminalized by state law, including any conduct giving rise to a realistic probability, not a theoretical possibility, that a state would apply the law and uphold the conviction based upon such conduct. And that was citing to Moncrief, the Supreme Court's decision in Moncrief. All right, Mr. Leo, excuse me, wasn't that the issue of the quantum of force? Yes, Your Honor, that included a Virginia common law. That issue here, and I'm suggesting to you that perhaps that's apples and oranges. So what we're talking about here is the breadth of the statute and whether the General Assembly, by carving out exceptions for antique firearms in some sections of the Virginia Code, showing it knows how to do so, declined to do so in 182280. Your argument seems to leapfrog over that into the refuge of Moncrief. And I'm suggesting to you that you need to go through the steps before you can seek any relief from Moncrief. You have to tell us why any does not mean any, particularly because the General Assembly of Virginia has said in 182308, the different statute, that any does not mean any because we're excluding antique firearms, but it didn't do it in 182280. So I think you've got to address that before you can seek refuge in Moncrief. Well, I think, Your Honor, and I would respectfully state that the type or nature of the conviction has no bearing on this Court's application of the categorical approach. You're taking issue with respect to a use of force issue with regard to the Moncrief decision when this Court has repeatedly discussed the realistic probability test in terms of a number of different particular statutes. So I think that the nature of the statute or the nature of the particular offense is irrelevant. When you say apples to oranges, my response to that is that there really must be the realistic probability test. And then going further with respect to 18.2-308 when you're citing to Armstrong v. Commonwealth and then Petitioner cites to Stark and Miller, my statement to that is there is nothing in the statute. In reading 18.2-280, there's nothing in the statute with regard to antique firearms. And although the legislature and other courts have spoken to firearm offenses for purposes of other statutes, I think the Supreme Court has said, well, this cannot be a theoretical possibility here. And that's where I think the leap has to be made for purposes of whether or not an individual can be convicted under 18.2-280 under Virginia State Courts. And what's more prevalent here is that Petitioner is completely unable to come up, despite this particular offense being on the books for a number of years, with a prosecution for that particular offense while utilizing an antique firearm. Present operability is obviously relevant in 18.2-280 because we're talking about discharging or causing to be discharging. Mr. Julio? Yes. This is Beth Reshing. Yes. You mentioned that the Petitioner hasn't been able to come up with a case showing a prosecution under this statute. But you also argue in your brief that the reasonable probability test is part and parcel of the categorical approach, which I think is true based on our case law. And my understanding of that part and parcel is that it's up to you when we are talking about whether this is that someone would be prosecuted in Virginia. That it doesn't somehow shift the burden to the other party to come up with an actual prosecution, which that's been the standard in our cases. We've accepted that something's not a categorical match based on the interpretation of a state court and the definition that's given there. I'm wondering why should we be taking a different approach as the BIA appears to do? Your Honor, if I understand your question correctly, I think we're in a situation here where the BIA's interpretation of the categorical approach fell in line with this court's and the Supreme Court's interpretation of the categorical approach and with regard to its applicability with regard to realistic probability. We've made a determination. The government has presented evidence that there is a categorical match here. And in the application of the categorical match, the Supreme Court demands that we must now make that determination of whether or not there's a realistic probability. And what this court has stated is that now the onus is on Petitioner to come forward and say, is this a realistic probability, not merely a theoretical probability, that he or she would be convicted on this particular statute for an offense that's more broad or overly broad when compared to the federal statute. And I think that's, when I say part and parcel and when the government says part and parcel is brief, I think what we're trying to do, what's being argued here is really how Moncrief, Mathis, Duanes Alvarez has sort of interpreted this categorical approach in saying, listen, we have to look at the elements of the conviction here. And then as we look at the elements of conviction, if there's a categorical match, we must now make that determination of whether or not there is a realistic probability. And though I do not take lightly with regard to the pushback regarding the legislature and the interpretation of any firearm, I think that's a leap beyond what the categorical approach or the realistic probability approach is telling, is commanding us to do here, which is does the state court prosecute individuals for antique firearms under 18.2-280? And there's nothing before this court that suggests that there is a realistic probability that an individual in a public place would be convicted for discharging an antique firearm. And that, in essence, is what the argument is. And in Moncrief, with regard to its language, I think it was pretty clear, and this court has consistently applied realistic probability tests. I've mentioned United States versus Winston. I've stated in my brief that we have United States versus Diaz, United States versus Covington, United States versus Battle. United States versus Battle, which was an assault with intent to murder case. And so the state actually prosecutes assault with intent to murder for purposes for it to be a violent felony. And the court applied the realistic probability test. And I think that's where the confusion, I think the misapprehension from petitioners here is that the realistic probability test somehow dispenses with petitioners' requirement to set forth here a conviction or a prosecution, in fact, under state law for discharge of a firearm, which is an antique, in a public place here. And I don't think that the petitioner is able to present any of that evidence. Now, if the court wishes to go beyond the realistic, go ahead. Yes, Your Honor. Mr. Leo, this is Judge Keenan. Mr. Leo, I think you've been sidestepping, though, the main point here, and that is whether there is a categorical match. You agree that you lose if there's not a categorical match, don't you? Irrespective of Moncrief, if there's not a categorical match, you lose, right? If there's not a categorical match with regard to whether or not we should now move forward to the application of a modified categorical approach, is that your question, Your Honor, or whether or not we lose on its face with regard to the categorical approach? Because MAP is— Mr. Leo, please quit talking over, and I think maybe part of it is the telephone, and it's not your fault, but try to listen for the question if you could. Yes, Your Honor. The—if this is not a categorical match, you lose, right? And so it seems to me that what you're trying to do is insert the Moncrief analysis, the Moncrief dictum, as an element of the categorical analysis. You're saying that it's necessarily part of every categorical analysis. Could you tell me yes or no, whether that's your position? Your Honor, yes. That is my position with regard to the categorical approach, application of the realistic probability approach with regard to every— So it wouldn't matter how unambiguous the statute would be in your perspective. You always have to go to realistic probability in order to exclude a categorical match. Is that correct? I think you do, speaking hypothetically, in this particular question, you're saying yes, Your Honor. Okay. Thank you. So in just continuing further, I— Mr. Leo, this— Yes, Your Honor. I've been wanting to ask a question. I haven't been in a good place for it yet. In two instances in the proceedings before it got to our court, an immigration judge ruled against the position that the government espouses in this proceeding in the Court of Appeals. What deference, if any, do we give to what the immigration judge or immigration judges ruled on this issue? Well, in both situations, since the Board of Immigration Appeals reversed the immigration judge's decision, our position is that it is the Board of Immigration Appeals' decision that is before this court and not the immigration judge's decision. So there would be no deference, no consideration whatsoever. It obviously is before the court. Judge King? Yes. This is Jackie. Judge Rushing dropped off the call. I will place everyone on mute and attempt to reconnect her. Judge Rushing, are you back on the line? Yes. Thank you. Thank you. Sorry about that. Judge King, I believe everyone's on the line, and Mr. Leo is unmuted to begin speaking. Yes, Judge. Thank you, Madam Clerk. Mr. Leo, proceed. Yes, sir. Yes, in response to your question, as indicated in our brief, where the Board of Immigration Appeals' decision supplants the immigration judge's decision, under your court's precedent, you would review only the Board of Immigration Appeals' decision. Obviously, our brief supports the Board of Immigration Appeals' decision because it's our position that that is the only decision before the court. But we don't give any debris to the Board of Immigration Appeals, either, then. With regard to the interpretation of the law, it's a question to know, though, but the immigration folks have been all over the place on what their view of it is. That's just what it appears to me. Anyway, you go right ahead. Yes, Your Honor. With regard to your standard of review would be de novo, particularly with regard to the interpretation of state law. The agency has no expertise in that environment. It is, however, attempting to interpret the Supreme Court, as well as this Court's decisions with regard to the applicability of the Removability Statute 237A-2C here, which is what it has been interpreting by the BIA in this particular case. In turning lastly, and I feel as though my time is effectively running short here with regard to this, the government states clearly that Petitioner is unable to come up with a state court decision that has suggested or indicated that an individual would be convicted of a firearms offense with regard to the utilization of an antique firearm. These state cases, Stoughton v. Commonwealth, Miller v. Commonwealth, and Armstrong v. Commonwealth, number one, interpret other statutes, as I've indicated previously in this argument, and number two, do not speak to 18.2-2A08 for purposes of that particular statute. And that really becomes the question here, is whether or not Petitioner has done so. And in short, Your Honors, we would ask that the petition for review be denied because Petitioner is removable under 237A-2C of the Immigration Nationality Act because his conviction is categorically a firearms offense. And thank you very much, Your Honors. Thank you, Ms. O'Neill. Let me see whether Judge Keenan or Judge Rushing have anything further to ask you. No, thank you, Judge King. No, thank you. Very good. Now, we're back to rebuttal, and is it Ms. Lee that's going to do the rebuttal? Yes, Your Honor. Be pleased to hear from you, ma'am. Yes, Your Honor. The government's position that the realistic probability test applies in all cases, regardless of whether there is a categorical match between the state statute of conviction and the INA Offensive Remusability, has already been rejected by this court. In Apparicio-Soraya 740F3-152, a Fourth Circuit case from 2014, the court said, We need not hypothesize about whether there is a realistic probability that state prosecutors will charge defendants engaged in overbroad conduct. We know that they can because the state's highest court has said so, and the realistic probability test does not apply. Moncrief is an announcement of the realistic probability test where there is a categorical match based on statutory language and the absence of state court decisions illustrating that there is not, basically that there is a categorical match. Moncrief is not licensed to treat the state law as if it is narrower than it plainly is. The Fourth Circuit is not alone in this interpretation of Moncrief and in the faithful application of the categorical analysis, as we've detailed in our brief. It's joined by the First, the Third, the Seventh, the Tenth, and the Eleventh Circuits in understanding the categorical approach was not upended by Duenas-Alvarez or Moncrief. It is the government's burden to show a categorical match between the statute of conviction and the removable offense. If the type and nature of conviction has no bearing, as counsel for the government has explained, Moncrief doesn't change that analysis. And because there is nothing in the Virginia statute, 18.2-280, that indicates that antique firearms are excluded, unlike countless other provisions of Virginia state statutes that we have offered in our brief, there is no categorical match. Because government counsel relies heavily on battle, but battle was a case where this court turned to the realistic probability test because it followed the categorical match as the petitioner is advancing here, which is to look first to the match itself based on statutory language and state court decisions, and it found a categorical match. So then it turned to the realistic probability test. Battle also undercuts the government's argument that the proof in the realistic probability test must be exactly the overbroad conduct that takes the state statute of conviction outside of the INA's removability offense. In battle, the appellant who was convicted of assault with intent to murder tried to use two cases of depraved heart second-degree murder convictions to satisfy realistic probability. This court analyzed the two cases and rejected them because of the elements, not because they were under a different statute. Thank you, and I heard the chime for my time. Thank you, Ms. Lee. Appreciate it very much. We appreciate the fine arguments of the various lawyers, and this case will be submitted and resolved by the panel. This honorable court stands adjourned. Seeing as I, God save the United States and this honorable court.
judges: Robert B. King, Barbara Milano Keenan, Allison J. Rushing